# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### STATESVILLE DIVISION
### 5:04CV71-1-V
### 5:96CR33-2-V

| | |
|---|---|
| STEVEN KELLY, | ) |
| | ) |
| Petitioner, | ) |
| v. | ) **ORDER** |
| | ) |
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Respondent. | ) |

**THIS MATTER** comes before the Court upon Respondent's Motion for Summary Judgment, filed July 26, 2004; and Petitioner's Motions for Leave to Amend the Motion to Vacate, filed August 18, 2004, June 13, 2005, and July 5, 2007.

For the reasons set forth below, and in Respondent's Motion for Summary Judgment, this Court grants Respondent's Motion for Summary Judgment and dismisses Petitioner's Motion to Vacate, Set Aside, or Correct Sentence.

## PROCEDURAL HISTORY

On December 3, 1996, Petitioner and his brother Daniel Kelly[1] were indicted for violating 21 U.S.C. §§ 846 and 853. Count One charged the defendants with conspiracy to possess with intent to distribute and distribute a quantity of cocaine and cocaine base in violation of 21 U.S.C. § 846. On January 30, 1997, the Government filed a Notice of Intent to Seek Enhanced Penalties Pursuant to 21 U.S.C. §§ 841, 851 against each of the

---

[1] The Court notes that Daniel Kelly also filed a Motion to Vacate, Set Aside, or Correct Sentence which this Court has ruled on this same day. (5:04CV53-3-V).

defendants. On March 17, 1997, the Government filed a Supplemental Notice of Intent to Seek Enhanced Penalties Pursuant to 21 U.S.C. §§ 841, 851 against each of the defendants. A jury trial began on March 18, 1997,[2] and ended on March 31, 1997, with convictions for both defendants for conspiracy to possess with intent to distribute cocaine between January 1, 1995, and November 1996. Thereafter, the Court sentenced Petitioner to 360 months imprisonment.

Petitioner filed a notice of appeal on July 7, 1998. His co-defendant brother filed a notice of appeal on July 8, 1998. The appeals were consolidated pursuant to a July 28, 1998, order of the Clerk of the Fourth Circuit Court of Appeals. On appeal Petitioner and his brother raised the following issues:

1. Defendants were entitled to judgments of acquittal because the evidence was insufficient to support the conspiracy charge.

2. The district court erred in denying defendants' motion for recusal; alternatively, the district court judge erred in conducting ex parte communications with the prosecutor during the trial in violation of the defendants' Sixth Amendment rights to assistance of counsel, Fifth Amendment right to due process, and rights to fundamental fairness.

3. Defendants were denied their rights to a fair trial, due process of law, and fundamental fairness where the district judge refused to exclude pervasive and prejudicial evidence of an irrelevant marijuana case in Louisiana.

---

[2] On the day the trial commenced, the Clerk of Court received a letter at the federal courthouse in Charlotte advising that a bomb would go off in the federal courthouse in Statesville unless the charges against the defendants were dropped. The judge and the prosecutor were informed of the threat, but neither the defendants nor their attorneys were informed. No bomb was found.

4. The district court erred in denying defendant's motion for a mistrial when the prosecution violated the court's order that excluded conversations that were protected by the attorney-client privilege.

5. The district court erred in failing to instruct that the jury could not convict upon a mere showing of an illegal agreement with a government informer.

8. The district court erred in its calculation of the quantity of drugs attributable to each defendant.

On August 1, 2001, the Fourth Circuit issued an unpublished per curiam decision noting that "the Kellys raise numerous arguments on appeal. Although we address only their two principle arguments, we have also carefully considered their remaining contentions. Because we have concluded that their additional claims are clearly meritless, we do not discuss them further." United States v. Kelly, 16 F. App'x 152, 156 (4th Cir. 2001)(unpublished). The Court of Appeals affirmed the Kelly's convictions, concluding that "the government presented ample evidence to support the jury verdict that the Kellys engaged in conspiracy to possess cocaine with intent to distribute cocaine." Id. The Court of Appeals, however, vacated defendants' sentences and remanded them for resentencing in light of the Supreme Court's holding in Apprendi v. New Jersey, 530 U.S. 466 (2000). On remand, Petitioner was sentenced to 262 months imprisonment.

Petitioner filed a notice of appeal on April 24, 2002. Again, his appeal was consolidated with the appeal of his brother. In an unpublished, per curiam decision issued on April 21, 2003, the Court of Appeals affirmed the Kellys' convictions and sentences. United States v. Kelly, 64 F. App'x 361 (4th Cir. 2003). On June 2, 2003, the United States Supreme Court denied Petitioner's petition for writ of certiorari.

On June 1, 2004, Petitioner filed the instant timely Motion to Vacate, Set Aside, or Correct Sentence. In his Motion to Vacate Petitioner alleges that: 1) the Government violated its Brady obligation by not providing discovery concerning witness Harrington's drug involvement with his unindicted co-conspirator; 2) the Government violated its Brady obligation when it denied Petitioner access to grand jury materials; and 3) the indictment was fatally defective under Apprendi.

On August 18, 2004, Petitioner filed a Motion to Amend seeking to add a claim based upon the Supreme Court's holding in Blakely v. Washington, 542 U.S. 296 (2004). On June 13, 2005, Petitioner filed another Motion to Amend seeking to add a claim based upon the Supreme Court's holding in Shepard v. United States, 544 U.S. 13 (2005). On July 5, 2007, Petitioner filed a final Motion to Amend seeking to include in the record newspaper articles and a 2004 affidavit and seeking to add further argument regarding his Blakely claim.

## ANALYSIS

## I. BRADY CLAIM – IMPEACHMENT EVIDENCE

Petitioner alleges that the Government violated Brady v. Maryland, 373 U.S. 83 (1963),[3] and its progeny by concealing impeachment evidence relating to government witness James Harrington's drug activities with George Farrah, an unindicted co-conspirator in Petitioner's criminal case. (Pet. Mot. to Vac. at 1-16). More specifically,

---

[3] The Court notes that Petitioner continuously refers to his claim as a claim under Brady v. Maryland, 373 U.S. 83 (1963). However, because the alleged suppressed evidence relates to the credibility of a witness it is more specifically a Giglio claim and the Court will refer to it as such. See Giglio v. United States, 405 U.S. 150 (1972). The analyses for these two claims closely parallel each other.

4

Petitioner states that "[a]ttorneys for the defendants requested precise Brady material from the government and documentation concerning Orlando Milian, James Harrington, George Farrah, Milton Albury and all persons involved with the investigation of the Kellys." (Pet. Mot. to Vac. at 3). Petitioner's defense attorney amended his request to include all documentation related to or generated from said information. Petitioner asserts that despite this specific request, Harrington's drug involvement with George Farrah was not turned over to him. (Id.).

### A. Procedural Default

Petitioner has filed two direct appeals relative to his conviction and sentence but has never raised a claim for failure to turn over impeachment evidence. Claims that could have been, but were not, raised on direct review are procedurally defaulted. In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors complained of or must demonstrate that a miscarriage of justice[4] would result from a refusal to entertain a collateral attack. See United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999)(citing United States v. Frady, 456 U.S. 152, 167-68 (1982)), cert. denied, 529 U.S. 1010 (2000). The existence of cause for a procedural default must turn on something external to the defense. See Murray v. Carrier, 477 U.S. 478, 488 (1986). As set forth below, Petitioner has failed to carry his burden of establishing cause.

---

[4] In order to establish a miscarriage of justice a petitioner must establish actual innocence. See Murray v. Carrier, 477 U.S. 478, 496 (1986). Petitioner makes no claim of actual innocence to excuse his procedural default.

The "cause" asserted by Petitioner for failing to raise this issue on direct appeal is that the "information was not ascertained until trial and appeal were well over." (Pet. Form 2255, ¶ 13). As stated above, cause so as to excuse procedural default must be based upon something external to the defense. Petitioner, significantly, does not set forth exactly what external impediment excuses his failure to raise this Giglio issue on appeal.

Tellingly, Petitioner provides no specifics with regard to any independent attempts to discover information regarding Harrington's drug dealings prior to Petitioner's appeal. Petitioner's vague assertion that "independent witnesses approached the Kellys' family, after the Kellys had diligently attempted to locate these individuals over the years" (Pet. Trav. to Gov't Resp. at p. 4), is wholly insufficient to establish cause to excuse procedural default.

Nor does Petitioner state why he could not have earlier discovered this information from other sources. Indeed, Petitioner himself asserts that "[f]ederal trial transcripts, prior to the Kelly's arrest effectively resolve Harrington's massive drug involvement . . . ." (Id. at p. 3). Petitioner makes no attempt to explain why these transcripts were not available to him prior to his appeal. The Court finds it surprising that such information was not found during a pre-trial background investigation of Harrington.

Nor does Petitioner attempt to explain why he waited until after his appeals concluded to contact a private investigator. (Pet. Mot. to Vac., Ex. A). This is particularly relevant as it appears likely that Petitioner was aware prior to trial of

6

Harrington's drug activities.[5]

In addition, Petitioner asserts that "information garnered from Freedom of Information requests were non-existent, until 2003-04." (Id. at p. 4). Although Petitioner complains about not receiving responses to his information requests to various agencies until 2003-04, he does not set forth why this was the case. A review of the letters submitted by Petitioner indicates to the Court that he did not make any requests until December 2003 and early 2004 – after the conclusion of his second appeal. (Pet. Mot. to Vac., Ex A).

Based upon the above, this Court finds that Petitioner has not carried his burden of establishing that an external impediment interfered with his ability to raise this claim on direct appeal.

### B. Materiality

Even if Petitioner had not procedurally defaulted his claim it would still fail. Brady and its progeny require the government to provide to the defendant all information in its possession which could tend to exculpate the defendant or could be useful for impeachment of any prosecution witness.[6] Brady v. Maryland, 373 U.S. 83, 87 (1963);

---

[5] Petitioner does not assert that he was completely unaware of Harrington's extensive drug dealings beyond what Harrington admits on the stand. Indeed, based upon circumstances such as Richard Gregg's alleged knowledge of Harrington's extensive drug dealings, it appears logical that Petitioner too was aware of this fact. Further supporting this conclusion is Petitioner's own assertion (made in 2004) that he had diligently looked for witnesses on this issue for years. (Pet. Trav. to Gov't Resp. p. 4).

[6] The Brady rule does not apply if the evidence in question is available to the defendant from other sources, either directly or via investigation by a reasonable defendant. United States v. Brothers Constr. Co. of Ohio, Inc., 219 F.3d 300, 316 (4th Cir. 2000)(citing United States v. Wilson, 901 F.2d 378, 380-81 (4th Cir. 1990) and

Giglio v. United States, 405 U.S. 150, 154-55 (1972). To succeed on a such claim a petitioner must demonstrate that: 1) the evidence at issue was favorable to the defendant, whether directly exculpatory or of impeachment value; 2) it was suppressed by the state, whether willfully or inadvertently; and 3) it was material. Spicer v. Roxbury Correctional Institute, 194 F.3d 547, 555 (4th Cir. 1999)(quoting Brady v. Maryland, 373 U.S. 83, 87 (1963)). Assuming without deciding that Petitioner satisfies the first two elements, his Giglio claim still fails because he cannot establish that the information at issue was material.

      Evidence is material if there is a reasonable probability that the outcome of the trial would have been different if the evidence had been disclosed. See United States v. Bagley, 473 U.S. 667, 682 (1985). A reasonable probability is established when the failure to disclose the evidence "could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." Kyles v. Whitley, 514 U.S. 419, 435 (1995). "However materiality is not established by the mere possibility that the withheld evidence may have influenced the jury." United States v. Palmer, 160 F.3d 473, 479 (8th Cir. 1998).

Petitioner's Giglio claim fails because he does not establish that the evidence at issue was material. That is, the failure to provide the defense with information that Harrington was involved in drug deals with George Farrah could not "reasonably be

---

Barnes v. Thompson, 58 F.3d 971, 975 n.4 (4th Cir. 1995)). Based upon Petitioner's ability to locate the impeaching information at issue once he hired a private investigator and filed Freedom of Information requests, it is highly likely that Petitioner's Giglio claim could be dismissed on the basis that he could have discovered it from other sources with a reasonable amount of investigation. However, because the Giglio information at issue is not material, the Court need not decide that precise issue.

taken to put the whole case in such a different light as to undermine confidence in the verdict."

As an initial matter, it was clear from the testimony that Harrington was a felon[7] and had a past history of involvement with drugs. (Mar. 19, 1997, Trial Tr. pp. 6-8, 112-14). Consequently, information concerning ongoing drug dealings, while impeaching, would not have revealed an unexposed side of Harrington.

Moreover, as indicated in the Fourth Circuit's August 1, 2001, opinion upholding the sufficiency of the evidence used to convict Petitioner, the testimony of Gregg, a lawyer and friend of Petitioner's, was crucial to the conviction of Petitioner and corroborated much of Harrington's testimony. For example, Gregg testified that in 1995 he lived with Petitioner who provided him with cocaine. (Trial. Tr. pp. 198, 231). Gregg also testified that on a least two occasions he saw Petitioner with between a quarter and half of a kilogram of cocaine. (Id. at pp. 234-45). Gregg also testified that he was aware of Petitioner using large sums of money to buy drugs to resell. (Id, at pp. 236-37). Gregg also testified that he was aware of at least three cocaine deals between Petitioner and Daryl Parkhurst involving between two and three kilograms of cocaine. (Id. at pp. 263-64). Gregg also testified that in the summer of 1996, Petitioner introduced him to a cocaine supplier who also transported cocaine from Miami to North Carolina and on one occasion Petitioner and an individual named Joey showed him a kilogram of cocaine. (Id. at pp. 249-50). Gregg also testified that Petitioner had told him that his fall-back plan, if arrested, was to claim to be an informant. (Id. at p. 265).

---

[7] Mr. Harrington's trial testimony revealed that he had been convicted of conspiracy to traffic in cocaine and aggravated robbery. (Trial Tr. p. 112).

Significantly, Gregg also testified as to Petitioner and his brother's participation in the reverse sting operation in North Carolina. (Id. pp. 269-80).

The Fourth Circuit also noted in its opinion that independent acts of Petitioner and his brother corroborated Harrington's and Gregg's testimony. United States v. Kelly, 16 Fed. Appx. 152, 156 (4th Cir. 2001). Most specifically, the Fourth Circuit noted that both Daniel Kelly and Petitioner traveled to North Carolina in direct contravention of instructions from D'Ambrosia and other law enforcement officers.

Finally, as the Fourth Circuit concluded, the record provided "ample evidence" to support the jury verdict. Consequently, this Court concludes that the Giglio information at issue here does not undermine confidence in the verdict and Petitioner's Giglio claim fails. See United States v. Ellis, 121 F.03d 908, 918 (4th Cir. 1997)(in determining materiality of Brady evidence a court must evaluate the whole case).

## II. BRADY VIOLATION – GRAND JURY MATERIALS

Petitioner also alleges that the Government violated Brady v. Maryland, 373 U.S. 83 (1963), and its progeny by withholding grand jury minutes and documents from him at the time of discovery while later disseminating the same information to other inmates, thereby violating the secrecy of the grand jury proceedings. (Pet. Mot. to Vac. at pp. 17-21).

In support of his allegation, Petitioner states that on January 12, 1999, he was released into the general prison population in Atlanta where he subsequently purchased "the Kelly's [sic] secret grand jury minutes" from inmate Malcolm Malik for $ 100.00. (Id. at p. 17). Petitioner further alleges that he learned from Malik that the government mailed these documents to him while he was being held in the

10

Mecklenburg County Jail in North Carolina.  Petitioner also alleges that Ricky Brock had access to these grand jury minutes.

Again, Petitioner has filed two direct appeals relative to his conviction and sentence but has never raised a Brady claim for withholding grand jury minutes that had been disseminated to others.  Again, claims that could have been, but were not, raised on direct review are procedurally defaulted.  In order to collaterally attack a conviction or sentence based upon errors that could have been but were not pursued on direct appeal, a petitioner must show cause and actual prejudice resulting from the errors complained of or must demonstrate a miscarriage of justice[8] would result from a refusal to entertain a collateral attack.  See United States v. Mikalajunas, 186 F.3d 490, 492-93 (4th Cir. 1999)(citing United States v. Frady, 456 U.S. 152, 167-68 (1982)).

Petitioner asserts no "cause" whatsoever as to why he failed to raise this issue on direct appeal.  Indeed, Petitioner states in his Motion to Vacate that he learned of the Government's alleged dissemination of portions of the grand jury minutes in January 1999 – prior to the conclusion of Petitioner's first appeal.  (Pet. Mot. to Vac. at p. 17).  Petitioner's first appeal was pending at that time.  Because Petitioner has not established cause for failing to raise this claim on direct appeal, this Court holds that he has procedurally defaulted this claim.

Moreover, even if Petitioner had not procedurally defaulted his claim it would still fail.  Petitioner argues that the Government violated his constitutional rights under

---

[8] In order to establish a miscarriage of justice a petitioner must establish actual innocence.  See Murray v. Carrier, 477 U.S. 478, 496 (1986).  Petitioner makes no claim of actual innocence.

11

Brady when the Government failed to turn over grand jury minutes in response to his discovery requests. For the reasons set forth below such claim fails on the merits.

Disclosure of testimony by witnesses before a grand jury is governed by the Jencks Act. 18 U.S.C. § 3500(b). Section 3500(a) mandates that

> no statement or report in the possession of the United States which was made by a Government witness or prospective Government witness (other than defendant) shall be the subject of subpoena, discovery, or inspection until said witness has testified on direct examination in the trial of the case.

It would thus appear that the statute explicitly exempts such statements and reports from discovery. Consequently, this Court holds that any failure to turn over the testimony at issue to Petitioner prior to trial did not violate Brady. See United States v. Jones, 612 F.2d 453, 454 (9th Cir. 1979)("Brady does not overcome the strictures of the Jencks Act. When the defense seeks evidence which qualifies as both Jencks Act and Brady material, the Jencks Act standards control."), cert. denied, 455 U.S. 966 (1980).

The Jencks Act, however, does require that after a prosecution witness has testified on direct examination, the court shall, on motion of the defendant, order the Government to produce to the defendant any statement of the witness in its possession which relates to the subject matter of the witness's testimony. 18 U.S.C. § 3500(b). The Government states that after Agent Gary Swinkey testified it provided defense counsel[9] with a copy of Swinkey's grand jury testimony prior to his cross-examination of this witness. Petitioner does not refute the notion that he received a copy of this grand

---

[9] Counsel for Petitioner's brother was also provided, in accordance with the Jencks Act, a copy of Swinkey's grand jury testimony.

jury testimony. The Court therefore finds that Petitioner fails to establish any type of Jencks Act violation.

Finally, Petitioner cites to Rule 6(e) of the Federal Rules of Criminal Procedure to support his contention that his constitutional rights were violated when the Government allegedly disseminated grand jury testimony to individuals not covered under the exception. Rule 6(e) codifies the rule of grand jury secrecy and also provides exceptions to the general rule of secrecy. Rule 6(e)(2) provides that various individuals, including an attorney for the government, shall not disclose matters occurring before the grand jury except as other wise provided in these rules. Any claim asserted by Petitioner based upon this Rule fails for at least two reasons.

First, it is unclear to the Court that a remedy for a violation of this rule would impact a defendant's conviction or sentence. Indeed, the rule itself sets forth that a violation of Rule 6(e)(2) may be punished as contempt of court. Fed. R. Crim. P. 6(e)(7).

Second, Petitioner's claim that the Government violated this rule is extremely tenuous at best. That is, the only evidence presented by Petitioner is hearsay – another inmate told him that the Government had sent him a copy of the witnesses grand jury testimony. Significantly, Petitioner fails to provide any affidavit from this inmate.[10] Petitioner provides no reason why he could not locate and interview Ricky

---

[10] Petitioner asserts the Government could easily locate this inmate and produce him for a hearing. Petitioner misunderstands the parties' respective burdens in this context. Mere unsupported assertions are insufficient to require an evidentiary hearing. In addition, at any such hearing it would not be incumbent upon the Government to locate Petitioner's witnesses.

Brock and Malcolm Malik who he asserts in his motion are both currently in federal custody. In contrast, the Government flatly denies that these minutes were sent to this inmate. Moreover, Petitioner does not address the fact that these grand jury minutes were in other individual's control – including his and his brother's counsel – and that any possible leak could have stemmed from these sources. Petitioner has thus failed to satisfy his burden.

### III. APPRENDI

Petitioner also alleges that his indictment was fatally defective pursuant to Apprendi v. New Jersey, 530 U.S. 466 (2000), and therefore his conviction was "obtained in violation of the constitution and laws of the United States."

On March 18, 2002, prior to Petitioner's resentencing, defense counsel filed a Motion to Dismiss or for a New Trial. Said motion sought to "dismiss the indictment for failure to charge the crime and failure to adequately advise the accused of the nature and cause of the accusation . . . . In the alternative, defendants move[d] for a new trial with a special verdict as to each element of the crime, including the type and quantity of the drug and prior convictions." On April 17, 2002, at Daniel Kelly's resentencing hearing, this Court denied this motion.

Petitioner's present claim of defective indictment is the same argument submitted on remand in support of his earlier motion to dismiss indictment. This Court ruled that this issue was foreclosed by the mandate rule. See United States v. Bell, 5 F.3d 64, 66 (4th Cir. 1993)(law of the case doctrine "forecloses relitigation of issues expressly or impliedly decided by the appellate court."). The Fourth Circuit upheld this ruling by this Court. See United States v. Kelly, 64 Fed. Appx. 361, 365 (4th Cir.

14

2003)(unpublished). Issues previously decided on direct appeal cannot be recast in the form of a § 2255 motion. Boeckenhaupt v. United States, 537 F.2d 1182, 1183 (4th Cir. 1976)("[O]nce a matter has been decided adversely to a defendant on direct appeal it cannot be relitigated in a collateral attack under Section 2255."). Consequently, this claim is not cognizable under 28 U.S.C. § 2255.

## IV. FIRST MOTION TO AMEND – BLAKELY

On August 18, 2004, Petitioner filed a Motion to Supplement seeking to add a claim based upon the Supreme Court's holding in Blakely v. Washington, 542 U.S. 296 (2004). More specifically, Petitioner argues that his sentence did not comply with the Sixth Amendment and therefore his sentence is constitutionally invalid.

Federal Rule of Civil Procedure 15 governs the procedure for amending § 2255 motions. Under Rule 15(a) of the Federal Rules of Civil Procedure leave to amend shall be freely given, absent bad faith, undue prejudice to the opposing party, or futility of amendment. See Forman v. Davis, 371 U.S. 178, 182 (1962).

Petitioner's conviction and sentence became final on or about June 2, 2003. Because Blakely v. Washington, 542 U.S. 296 (2004), was decided after Petitioner's conviction and sentence became final, in order to impact his sentence this case would have to be determined to be retroactive on collateral review. The Fourth Circuit, however, held that the rule announced in Blakely was not a watershed rule warranting retroactive application. United States v. Morris, 429 F.3d 65, 72 (4th Cir. 2005)(criminal defendant unable to raise Blakely claim for the first time in §2255 petition when judgment of conviction became final before the Supreme Court decided United States v. Booker, 543 U.S. 220 (2005)). Consequently, Petitioner's claim based upon Blakely

15

is meritless and would be dismissed outright and therefore his Motion for Leave to Amend is denied as futile.

## V. SECOND MOTION TO AMEND – SHEPARD

Petitioner also requests to be allowed to amend his Motion to Vacate to include a claim pursuant to Shepard v. United States, 544 U.S. 13 (2005). More specifically, Petitioner wishes to amend his Motion to Vacate to include a claim that the Court violated his Sixth Amendment rights when it engaged in judicial fact-finding with regards to his prior convictions.

Petitioner's second Motion to Amend can also be denied as futile. Like Blakely, Shepard, which was decided in 2005, was decided after Petitioner's conviction became final. Consequently, in order for the holding in Shepard to impact his sentence Petitioner must establish that this holding applies retroactively on collateral review. The Supreme Court has not ruled that the holding in Shepard applies retroactively. As such this Motion to Amend is futile.

Moreover, Petitioner's second Motion to Amend was filed after his limitation period expired.[11] A cause of action barred by an applicable statute of limitations is futile and therefore an amendment based on such a cause of action can be denied. See Keller v. Prince George's County, 923 F.2d 30, 33 (4th Cir. 1991). Because Petitioner's

---

[11] Petitioner's case became final on direct review when the Supreme Court denied his petition for writ of certiorari on June 2, 2003. Therefore his limitations period under the Anti-Terrorism and Effective Death Penalty Act (AEDPA) expired on or about June 3, 2004. 28 U.S.C. § 2255. He did not file his Motion to Amend until June 13, 2005.

Shepard claim does not relate back[12] to his original claims, the Court denies his Motion to Amend on that basis as well.

## VI. THIRD MOTION TO AMEND

On July 5, 2007, Petitioner filed a third Motion to Amend. In this Motion Petitioner seeks to amend his Motion to Vacate to include information about corruption in the Hollywood, Florida police department. Petitioner contends this information supports the Brady violation asserted in his Motion to Vacate.

The articles attached by Petitioner establish that seven police officers in the Hollywood police department were caught in a federal corruption probe. Petitioner, however, fails to establish a specific connection between information from the articles and his case. That is, Petitioner does not specify how any of the seven officers implicated in the corruption scandal were directly related to this case. It does not appear to the Court that any of the officers identified in the articles testified at Petitioner's trial.

Petitioner also attaches an affidavit of inmate Alexandro Bernal alleging that this affidavit establishes the misleading nature of Harrington's testimony. A review of the affidavit reveals that it was signed in April 2004 prior to the filing of Petitioner's Motion to Vacate. Petitioner provides no explanation as to why it could not have been submitted to the Court at an earlier date. In addition, the affidavit is redundant of information already submitted by Petitioner.

---

[12] According to the Fourth Circuit Court of Appeals, "[t]he fact that amended claims arise from the same trial and sentencing proceeding as the original motion does not mean that the amended claims relate back for purposes of Rule 15(c). See United States v. Pittman, 209 F.3d 314, 318 (4th Cir. 2000).

Out of an abundance of caution, the Court will grant the third Motion to Amend as to the two articles and the Bernal affidavit. The Court has considered these documents in its analysis of the Giglio issue regarding Harrington's testimony. However, for the reasons set forth above, the Court finds that these documents do not provide an avenue of relief for Petitioner.

Finally, Petitioner attempts to add further legal argument to his Blakely claim. As already stated, the holding in Blakely is not retroactive. Consequently, these arguments are futile and Petitioner's Motion to Amend on this point is denied.

**THEREFORE, IT IS HEREBY ORDERED** that:

1. Petitioner's first and second Motions for Leave to Amend are **DENIED**;

2. Petitioner's third Motion to Amend is **GRANTED in part** and **DENIED in part**;

2. Respondent's Motion for Summary Judgment is **GRANTED**; and

3. Petitioner's Motion to Vacate, Set Aside, or Correct Sentence is **DISMISSED**.

Signed: November 5, 2007

Richard L. Voorhees
United States District Judge